*Forrest Shepherd, LeRoy G. Pilling,* for complainant.

*Fergus J. McOsker,* for respondent.

LESTER BREY *et al. vs.* JOSEPH ROSENFELD *d.b.a.* ROSENFELD WASHED SAND AND STONE COMPANY.

JANUARY 30, 1947.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

For former opinion, see 72 R. I. 28.

PER CURIAM. After our opinion in this case was filed, *Brey* v. *Rosenfeld,* 72 R. I. 28, the plaintiffs, by special per-

mission, were given an opportunity to show cause why judgment should not be entered in favor of the defendant, as directed in our opinion.

They chiefly complain through counsel (1) That we overlooked certain material evidence as to defendant's alleged negligence and that we erroneously stated that the plaintiffs' case relied solely on the violation of the ordinance; (2) that we overlooked or misconceived a second aspect of plaintiffs' declaration to the effect that the defendant's cement truck was parked illegally so as to create a dangerous situation, in that it obstructed the passage and view of pedestrians using the westerly sidewalk and highway and also obstructed the view of motorists using said highway; and (3) that we overlooked the cases involving obstructions of view, which they cited, as distinguished from cases relating to other kinds of obstructions in a highway, which were relied upon in our opinion.

At the original hearing on the merits, plaintiffs' counsel placed great stress on the importance of the violation of the ordinance on the issue of negligence. Indeed, it appeared to us that all his arguments included such violation as the evidence relied on, in whole or part, to prove negligence against the defendant. For that reason we gave considerable attention to the effect of such violation on the issue of defendant's alleged negligence. However, the other evidence now emphasized was not overlooked, as plaintiffs complain.

We pointed out, in substance and effect, that in this state a violation of an ordinance is not negligence *per se;* and that there was no sufficient evidence in the transcript of other facts and circumstances, to be considered with the violation of the ordinance, from which a jury could reasonably find that the parking of the cement truck was not necessary to accomplish its legitimate service; that such parking was for a longer period than could be considered as a mere temporary inconvenience; and that it was done in a manner and under conditions that would have put the

defendant's agent on notice that the natural and probable effect thereof would be an unreasonable interference with the public right of travel on the highway. Evidence of such circumstances has been held to be necessary in order to constitute *proof* of actionable negligence in cases involving an obstruction in the highway similar to the one involved here. See the Massachusetts cases cited in our opinion.

Considering the evidence most favorably to the plaintiffs, we are of the opinion that it leads to only one reasonable conclusion, namely, that the evidence now referred to by plaintiffs, whether it be considered alone or with the unlawful parking, does not constitute *proof* of actionable negligence as alleged. And even if we were to assume, without admitting, that the truck was parked in a manner and under circumstances to provide sufficient evidence of defendant's negligence to go to a jury, yet there was no evidence, in our judgment, from which it could reasonably be found that such assumed negligence was the proximate or concurring cause of the accident.

The plaintiffs further complain that we overlooked or misconceived the second aspect of their declaration wherein they alleged that the defendant "did unlawfully park his truck by backing the same against the westerly curb of said Transit Street at a point about opposite the legally parked Woonsocket Consumer's Coal Co. truck, thus obstructing the passage and view of pedestrians using the westerly sidewalk and highway and also obstructing the view of motorists using said highway." We did not overlook this aspect of the case.

As we pointed out, the evidence clearly showed that at the time defendant's agent parked the cement truck against the westerly curb, the coal truck was not parked at the easterly curb; and was not so parked until some time, not definitely fixed, between 4 p.m. and the time of the accident about 4:15 p.m. From all the facts and existing circumstances, *as they appeared in evidence,* we concluded that a jury could not reasonably have found that the parked ce-

ment truck had continued to effectively obstruct the views of the child and the operator of the moving automobile, and that such obstruction of their views was the proximate or concurring cause of the accident. Hence extended discussion of cases relating to that particular type of obstruction did not seem necessary.

However, because of the plaintiffs' vigorous argument in this connection, we have re-examined the evidence. It is conceded, as the plaintiffs argue, that there were several witnesses who testified to the effect that they could not see over the cement truck and that to some extent, from certain places on Transit street, particularly on the westerly sidewalk, one could not see an automobile as it was coming up the hill and was approaching said truck. But on any reasonable view of the evidence a jury could not find that the view of the motorist by the child pedestrian and the view of the child by the motorist were obstructed by the parked cement truck, so that such obstruction of their views was the proximate or concurring cause of the accident.

Joseph Kozlik, the operator of the moving automobile, hereinafter called the Ford, which actually collided with the child, nowhere testified that the defendant's truck pre vented his seeing the child in time to avoid the accident and that the accident happened because of an obstruction of his view caused by said truck. He merely testified that as he drove up the hill approaching the truck you could not observe anything on the other side "by looking over the truck. You couldn't look over the truck." But he nowhere testified that from the time he was about to pass in front of the truck his view was any longer obstructed by it. He admitted that he turned left to pass between the front of the truck and the easterly curb; that he was then moving and continued to drive in second speed, at not more and probably less than seven miles per hour; that *after* passing the defendant's truck he turned to his right toward the westerly side of Transit street; that he did not then or at any time see the child; and that after turning gradually

to the right and while proceeding some distance south of the, cement truck he "heard a thud beside the car" and stopped "immediately", which was elsewhere described to be within four or five feet.

Stanley Bandurski testified that he drove the beach wagon, following the Ford and keeping a distance of about 25 to 30 feet between them at all times, and that he saw Kozlik as the latter was about to pass or was passing in front of the cement truck. Although he, Bandurski, testified that he did not see the child, he did not testify that, from the time he was about to pass or was passing in front of said truck until the accident, his view of the highway to the south of that truck was in any way obstructed thereby. Indeed, he testified that when he was about to pass or was passing in front of the cement truck he could and did see the Ford ahead of him on Transit street in the area where the child was struck; that he saw Kozlik then and there stop within four or five feet; that he, Bandurski, immediately stopped the beach wagon; and that only the hood of the beach wagon was at that time past the front of the cement truck.

The testimony of these two witnesses on this issue is vital. The undeniable physical facts in evidence confirm that testimony. Such evidence does not show that "as he (Kozlik) swung to the left to pass around the cement truck to get by it, he heard a thud"; or that the accident happened at a time and place while the views of Kozlik and the child continued to be effectively obstructed by the cement truck, as parts of the trial justice's rescript seem to indicate. The evidence clearly shows that the coal truck was parked parallel to the easterly curb, about fifteen feet *south* of the cement truck; that the accident happened *after* Kozlik had passed the front of the cement truck and after he had turned to his *right* toward the *westerly* side of Transit street; and that he was proceeding slowly on or close to that side at some distance to the *south* of the cement truck, when he "heard a thud" and stopped within four or five feet. Moreover,

according to the evidence, the child was picked up about four to six feet to the right of the Ford, that is, toward the westerly sidewalk; and it was elsewhere shown that the child was walking slowly and had not gone far from the westerly curb when he was struck.

In our opinion the only reasonable conclusion from all the evidence, considered most favorably to the plaintiffs, is that when the Ford was about to pass between the front of the cement truck and the easterly curb, Kozlik then had an unobstructed view, had he been looking, of the condition of the highway in front of him to the south of the cement truck; that considering the low speed of the Ford and Kozlik's admitted ability to stop it within four or five feet, he then had sufficient time and opportunity, had he been in the exercise of due care, to so control the Ford as not to strike the child; that from the time he was about to pass or was passing the parked cement truck, it ceased to obstruct his view of the highway to the south; and that any previous obstruction of his view by that truck had become merely a past condition or circumstance which in no way continued to operate effectively, in whole or part, as the proximate or concurring cause of the unfortunate accident; and that Kozlik's negligent operation of the Ford was the sole proximate cause of this accident.

For this reason we did not give extended discussion to the cases relating to obstructions of view on which the plaintiffs relied. We did indicate, however, that the case of *Milbury* v. *Turner Centre System*, 274 Mass. 358, was an example of such cases but that it was clearly distinguishable. In that case, in addition to a violation of an ordinance enacted for the primary purpose of preventing the creation of the precise dangerous condition involved, there was evidence of important facts and circumstances from which a prudent driver could reasonably be charged with notice that parking, in the place and manner as there shown, would naturally and probably result in danger to pedestrians; that parking under those circumstances could be found to amount to an

unreasonable interference with the public safety and right of travel on a crosswalk at an intersection; and that the obstruction of view thus created was in fact a continuing and effective factor in the proximate causation of that accident.

In the instant case, however, the only reasonable conclusion upon the undisputed evidence is that the alleged obstruction of Kozlik's view by defendant's truck did not continue to operate as an effective factor in the proximate causation, in whole or part, of the accident. In our judgment the cases relating to an obstruction of view, on which the plaintiffs rely, are not applicable to the facts as they appear in the evidence in the instant case.

From a re-examination of all the evidence, considered most favorably to the plaintiffs, and considering all their arguments, we are of the opinion that no cause has been shown which requires a reversal of our opinion or the ordering of a new trial.

*Edward F. Dwyer,* for plaintiffs.

*Francis V. Reynolds, John P. Cooney, Jr.,* for defendant.