DONALD ETTIN, PLAINTIFF-RESPONDENT, v. AVA TRUCK LEASING, INC., DEFENDANT-APPELLANT AND CROSS-RESPONDENT.

DONALD ETTIN, PLAINTIFF-RESPONDENT, v. SWEETS CO. OF AMERICA, INC., DEFENDANT-RESPONDENT AND CROSS-APPELLANT.

Argued January 20 and 21, 1969—Decided March 17, 1969.

464

466

Mr. *Gerald W. Conway* argued the cause for Ava Truck Leasing, Inc. (*Messrs. Schreiber and Lancaster,* attorneys).

Mr. *William V. Roveto* argued the cause for Sweets Co. of America, Inc. (*Messrs. Moser, Roveto & McGough,* attorneys).

Mr. *Bernard Chazen* argued the cause for Donald Ettin (*Messrs. Baker, Garber, Chazen & Duffy,* attorneys; *Mr. Nathan Baker,* of counsel).

The opinion of the court was delivered by

JACOBS, J. The jury returned a verdict for the plaintiff against both defendants Ava Truck Leasing, Inc. and Sweets Co. of America, Inc. The trial court entered judgment in the plaintiff's favor against Ava but granted Sweets' motion that judgment be entered in its favor notwithstanding the verdict. The Appellate Division affirmed (100 *N. J. Super.* 515 (1968)) and thereafter we certified. 52 *N. J.* 489 (1968).

The plaintiff was a route salesman employed by Feldman Food Products. His employer had leased a truck from Ava and after the plaintiff had loaded it with merchandise he proceeded with deliveries along his route. He made many stops for deliveries without experiencing any difficulties with the foot brake. When he came over the crest of a viaduct on Park Avenue in Hoboken he saw a tractor-trailer parked across both of the two southbound lanes. He was traveling south at about 25 miles per hour. The day was clear and dry and the tractor-trailer could readily be seen from the crest of the viaduct which was about 400 to 500 yards away. The roadway from the bottom of the viaduct to the tractor-trailer was about 300 to 400 yards and was flat. When he was halfway down the hill, according to his testimony, he applied his foot brake but the pedal "went right to the floor" and there was "no pedal at all". He pumped

the foot brake, tried to shift gears, and applied the hand brake but the truck was not slowed.

The plaintiff might have avoided the tractor-trailer by going into the northbound lanes but both of those lanes were heavily trafficked. If he stayed on the left or fast southbound lane he would have hit the rear of the last of several cars which had stopped because of the tractor-trailer. This he said would have caused a "chain reaction" and he therefore chose to pull to the right into the slow lane. He crashed into the center of the side of the trailer where a police officer found him with his foot on the brake pedal "right against the floor board". A police officer testified that he did not observe any skid marks though he acknowledged that he did not look for them. Another witness testified that he saw something wet on the curb and that he recognized it as brake fluid coming from the "right rear wheel" of the truck. An expert witness for the plaintiff gave his opinion that the accident resulted from the "loss of brake fluid due to a leak" which had occurred at the right rear wheel and which prevented "the application of brake pressure to any of the other wheels."

In due course the plaintiff filed an action against Ava and the owner, the lessee and the operator of the tractor-trailer. In this action the claim against the owner of the tractor-trailer was dismissed by the trial court and thereafter the jury returned a verdict of $9,000 in the plaintiff's favor against Ava and verdicts of no cause of action in favor of the lessee and the operator of the tractor-trailer. On Ava's application, the trial court granted a new trial. Before the first trial of the plaintiff's action against Ava the plaintiff had filed a separate complaint against Sweets, alleging that Sweets owned and managed the building where the tractor-trailer was parked, that it had "directed and participated" in the improper parking, and that as a result of its negligence the plaintiff had suffered injuries for which he sought damages against Sweets. The plaintiff's action against Sweets was consolidated for trial with the retrial of the plaintiff's

action against Ava. After full trial in the consolidated actions the jury returned a verdict of $17,000 in plaintiff's favor against Ava and Sweets. Both defendants moved for judgment notwithstanding the verdict, or in the alternative for new trial, and Ava moved to amend its answer to assert a cross-claim for contribution against Sweets. The trial court denied Ava's motions but granted Sweets' motion for judgment notwithstanding the verdict.

Ava appealed to the Appellate Division, not only from the plaintiff's judgment against it, but also from the judgment in favor of Sweets and the denial of its motion for leave to assert a cross-claim against Sweets. Sweets appealed "in order to protect its rights and interests" in the event of a reversal of the judgment entered in its favor. See 100 *N. J. Super.*, at 521. The plaintiff cross-appealed from the judgment entered in favor of Sweets. After the Appellate Division affirmed the Law Division's judgment in toto, Ava petitioned for certification and Sweets cross-petitioned, again as a protective measure; our grant was of both petitions. 52 *N. J.* 489 (1968).

We shall deal first with Ava's attack on the judgment obtained against it by the plaintiff. Ava's brief contains two pertinent points, the first of which asserts that the trial court erred in striking "contributory negligence" as a defense. In response the plaintiff asserts (1) that since its action against Ava was grounded not on negligence but on breach of warranty or strict liability in tort (*Cintrone v. Hertz Truck Leasing, etc.,* 45 *N. J.* 434 (1965)), contributory negligence was no defense as a matter of law, and (2) that in any event the facts themselves presented no issue of contributory negligence for submission to the jury. As to its first assertion, *Cintrone, supra,* and *Maiorino v. Weco Products Co.,* 45 *N. J.* 570 (1965) are dispositive. See also *Dallison v. Sears, Roebuck and Co.,* 313 *F.* 2d 343, 346–347 (10th Cir. 1962); *Dippel v. Sciano,* 37 *Wis.* 2d 443, 155 *N. W.* 2d 55, 63 (1967); *O. S. Slapley Company v. Miller,* 6 *Ariz. App.* 122, 430 *P.* 2d 701, 708–709 (Ct. App. 1967);

*People ex rel. General Motors Corp. v. Bua,* 37 *Ill.* 2d 180,
226 *N. E.* 2d 6, 16 (1967); *Pepsi Cola Bottling Co. v.
Superior Burner Serv. Co., Alaska,* 427 *P.* 2d 833,
842–843 (1967); *cf. Prosser, Torts* 656–657 (3d ed.
1964); 2 *Frumer and Friedman, Products Liability* §§
16.01[3], 16A[5][f] (1968).

In *Cintrone* the plaintiff was in a truck leased from
Hertz when the brake allegedly failed with resulting injury
to the plaintiff. He filed a complaint which contained a
count grounded on breach of warranty or strict liability.
The trial court submitted the issue of contributory negligence
to the jury which returned a verdict in Hertz's favor. On
appeal, the plaintiff contended that contributory negligence
was not available as a defense despite the fact that there
was evidence from which a jury could fairly find that the
plaintiff knew the brakes were defective for several days
before the injury and nevertheless continued to drive and
ride in the truck without making any report of the defect
to Hertz. His contention was rejected in an opinion by
Justice Francis which referred to the differing expressions
in the cases elsewhere on the issue of whether the "plaintiff's
negligence in using a warranted but defective article creates
a bar to recovery" and to Prosser's suggestion that the differ-
ences were largely semantic in nature. 45 *N. J.,* at 458. See
Prosser, "The Fall of the Citadal (Strict Liability to the
Consumer)," 50 *Minn. L. Rev.* 791, 838–840 (1966).

In *Maiorino* the plaintiff suffered a lacerated left wrist
while undertaking to open a glass container in which a
new toothbrush was packaged. He sued the maker of the
glass container along with the retailer from whom the
toothbrush was purchased. There was evidence that the
plaintiff had sought to open the container in an unusual
and careless manner and the question presented was whether
the trial court had acted properly in submitting to the jury
the issue of contributory negligence as a defense to the plain-
tiff's claim grounded on strict liability in tort. We held that
it had, citing *Cintrone* (45 *N. J.,* at 457–459) and saying:

Simply stated, we are of the view that where a plaintiff acts or fails to act as a reasonably prudent man in connection with use of a warranted product or one which comes into his hands under circumstances imposing strict liability on the maker or vendor or lessor, and such conduct proximately contributes to his injury, he cannot recover. In short, in our judgment the well known principle of contributory negligence in its broad sense is sufficiently comprehensive to encompass all the variant notions expressed in the cited cases as a basis for refusing plaintiff a recovery when his own lack of reasonable care joined or concurred with the defect in the defendant's product as a proximate cause of the mishap and his injury. A manufacturer or seller is entitled to expect a normal use of his product. The reach of the doctrine of strict liability in tort in favor of the consumer should not be extended so as to negate that expectation. 45 *N. J.* at 574.

See *Caputzal v. The Lindsay Co.,* 48 *N. J.* 69, 76 (1966).

The plaintiff urges that *Cintrone* was concerned only with assumption of risk and *Maiorino* only with misuse of property and he suggests, citing comment *n* to § 402A of the *Restatement (Second) Torts* (1965), that any bar to the plaintiff's recovery should be confined to those situations and terms, thereby avoiding the asymmetrical importation of contributory negligence terminology into an action not grounded on negligence. But that would involve the reintroduction of confusing terms and classifications which we have elsewhere sought to obviate (*McGrath v. American Cyanamid Co.,* 41 *N. J.* 272, 276 (1963)) and though we consider it hardly necessary, the term "contributory fault" could, if so desired, readily be substituted for the term "contributory negligence". See Prosser, *supra,* 50 Minn. L. Rev., at 838; Levine, "Buyer's Conduct as Affecting the Extent of Manufacturer's Liability in Warranty," 52 Minn. L. Rev. 627, 653 (1968).

Comment *n, supra,* sets forth that "contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence." *Restatement, supra,* § 402A, at 356. As well illustrated here, a plaintiff who uses a leased truck which is impliedly war-

ranted to be in serviceable condition, owes no duty to the lessor to inspect or guard in advance against the possibility of a defect; his failure to do so does not constitute negligence or afford a defense to the supplier of the defective truck. The comment additionally sets forth, without more, that if the user "discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery." That of course finds direct support in *Cintrone* where it could be concluded from the evidence that the injured truck driver "with knowledge of the danger presented by the defective brakes failed to take the care for his own safety which a reasonably prudent person would have taken under the circumstances" and was therefore guilty of contributory negligence barring recovery. 45 *N. J.*, at 459.

The plaintiff notes that the defense of contributory negligence is not generally favored in our law (*Hartman v. City of Brigantine*, 23 *N. J.* 530, 532 (1957)) and has been held by this Court to be unavailable in special situations where considerations of policy and justice so dictated. See, *e. g., Soronen v. Olde Milford Inn, Inc.*, 46 *N. J.* 582 (1966). Undoubtedly it will be also held unavailable by us in special situations within the warranty or strict liability in tort field as illustrated by *Bahlman v. Hudson Motor Car Co.*, 290 *Mich.* 683, 288 *N. W.* 309 (1939). There the plaintiff was a salesman who drove extensively and had been in several accidents. He was interested in purchasing a new car with a "safety top" and was shown a 1936 Hudson which was advertised as the safest car on the highway with a solid steel seamless top. He purchased the car and at a later date it was involved in an accident and turned over. He sustained a gash over the top of his head and "subsequent examination of the car revealed that this injury had been inflicted by a seam which extended across the top of the car, presenting a rough and jagged edge, saw-tooth in appearance, averaging approximately from one eighth to three fourths of an inch in thickness, the same being caused by the top of the car

being constructed of two pieces of metal welded together."
The court, after noting that the plaintiff's negligence had
undoubtedly caused the car to turn over, pointed out that
the defendant's warranty was not "for the purpose of avoid-
ing an accident, but in order to avoid or lessen the serious
damages that might result therefrom." When the warranty
was first put to the test it was found wanting and the plain-
tiff's head injury was the result; the court justly found
liability, holding that the defense of contributory negligence
was under the circumstances unavailable to the defendant.
See *Brown v. Chapman*, 304 *F. 2d* 149, 153 (*9th Cir.*
1962); *Frumer and Friedman, supra,* § 16a[5], at 3–221.

Much is still being written on the question of whether
the defense of contributory negligence should be available in
actions grounded on breach of warranty or strict liability
in tort and varying approaches are being advanced. See
Levine, *supra,* 52 Minn. L. Rev. 627; Epstein, "Products
Liability: Defenses Based on Plaintiff's Conduct," 1968
Utah L. Rev. 267; Prosser, *supra,* 50 Minn. L. Rev. 791;
Weston, "Contributory Negligence in Products Liability,"
12 Clev.-Mar. L. Rev. 424 (1963). One suggestion is that
the doctrine of comparative negligence or fault should wholly
replace contributory negligence not only in the field of
ordinary negligence but also in the field of warranty or
strict liability. See Levine, *supra,* 52 Minn. L. Rev., at 652–
662; *cf.* Heft and Heft, "Comparative Negligence: Wiscon-
sin's Answer," 55 *A. B. A. J.* 127 (1969). Many of us would
welcome early legislative or judicial adoption of comparative
negligence or fault but this is clearly not the case for pursuit
of the subject; nor is it the case for further evaluation of
*Cintrone* and *Maiorino,* as the plaintiff seeks, for we are en-
tirely satisfied that on the factual showing below there
was no reversible error in the trial court's striking of the
defense of contributory negligence.

In returning its verdict for the plaintiff, the jury accepted
his version of the accident which was strongly corroborated
by the independent testimony with respect to the circum-

stances immediately following its occurrence. As he testified, the day was clear and dry and there was no obstruction to visibility. While he at one point displayed confusion as to the distance in footage, he was clear and consistent in his testimony that when he came over the crest of the viaduct he saw the tractor-trailer and applied his foot brake when he was halfway down the hill. His testimony that he pumped the foot brake, tried to shift gears and applied the hand brake, was unimpaired and was undoubtedly credited by the jury. What more could he have been expected to do as a reasonably prudent person? He might have sharply turned into a sidestreet at the foot of the hill with more disastrous consequences; or he might have crossed over into the northbound lanes with fatal results. Obviously he was not called upon to do either and his failure presented nothing on which contributory negligence could be grounded. All in all, we are convinced that no prejudice resulted to Ava from the trial court's withdrawal of the defense of contributory negligence and that consequently Ava's first point affords no ground for reversal. *Cf.* 100 *N. J. Super.*, at 528; *LaMorgese v. Kern-O-Mix, Inc.*, 82 *N. J. Super.* 581, 586 (*App. Div.* 1964).

The second of the two points advanced by Ava in its attack on the judgment obtained by the plaintiff against it relates to the admission of the history of prior servicing of the leased truck. The history contained various maintenance entries including the adjustment and bleeding of the brakes, the addition of brake fluid, etc. The last entry was about five months prior to the accident and made no mention of brakes. When the history was first offered into evidence Ava did not object because, it says, the plaintiff's claim at that point of the trial was grounded on both negligence and strict liability. Later the plaintiff withdrew his negligence claim against Ava and proceeded entirely on his claim of strict liability. Ava then moved to strike the history but its motion was denied. In its charge, the trial court explicitly told the jury that the evidence of the servicing of the brakes months be-

fore the accident was admitted "only in as far as it may be relevant to the question as to whether or not this truck was fit on the particular day of this accident." The trial court also suggested to the jury that it must consider the nature of the servicings and whether they indicated any pertinent defectiveness on the date of the accident and that it must first decide whether the plaintiff sustained his burden of proving that the truck was "not fit to use on the day of the accident".

The Appellate Division, citing *Pabon v. Hackensack Auto Sales, Inc.*, 63 *N. J. Super.* 476 (*App. Div.* 1960), expressed the view that the evidence of the prior servicings was relevant to the crucial issue of whether the truck's brakes were defective on the day of the accident. 100 *N. J. Super.*, at 525. While the matter is not as clear as in *Pabon,* we cannot say that the evidence here was wholly irrelevant or that the trial court exceeded its broad discretionary authority in admitting it. See *Testa v. Metropolitan Life Ins. Co.*, 136 *N. J. L.* 9, 12 (*Sup. Ct.* 1947); *Bradley v. D. E. Cleary Co.*, 86 *N. J. L.* 338, 341 (*E & A.* 1914). Furthermore, we are satisfied that Ava suffered no prejudice from the trial court's ruling. In the light of the entire record, it is hardly conceivable that the jury was materially influenced by the servicing history when it crdeited the plaintiff's story as to how the accident happened. And having accepted the truth of his testimony, it could not have avoided the conclusion that the truck's brakes were defective on the day of the accident. On the basis of that conclusion, the plaintiff was legally entitled to prevail on his claim grounded on breach of warranty or strict liability in tort (*Cintrone v. Hertz Truck Leasing, etc., supra,* 45 *N. J.* 434). Accordingly, the Appellate Division's action, insofar as it sustained the plaintiff's judgment against Ava, is affirmed.

We come now to Ava's appeal from the denial of its motion for leave to file a cross-claim against Sweets and from the judgment entered in favor of Sweets. While the matter of the cross-claim should have been raised earlier in the

trial proceedings, we see no just reason for the denial of the motion. The jury had returned a verdict of $17,000 against both defendants and at that point Ava clearly had the right to seek relief, as it did, under New Jersey's Joint Tortfeasors Contribution Law. *N. J. S.* 2A:53A–1. When the trial judge later granted Sweets' motion for judgment notwithstanding the verdict, Ava became an aggrieved party with the right of appeal. See 100 *N. J. Super.*, at 526; *Hutcherson v. Slate,* 105 *W. Va.* 184, 142 *S. E.* 444, 447 (1928).

In its attack on Ava's standing to appeal, Sweets points out that the plaintiff had filed individual complaints against it and Ava and it urges that conceptually each action remained "separate, independent and distinct" despite the order of consolidation. Surely nothing may properly turn here on procedural conceptualities though we note the comment in 2 *Schnitzer and Wildstein, New Jersey Rules Service,* at *page* 1506 that "In legal contemplation, consolidation fuses the component cases into a single action." See *R. R.* 4:43–1(*a*) and (*e*); *Roden v. Empire Printing Company,* 135 *F. Supp.* 665, 667 (*D. Alaska* 1955), affirmed, 247 *F.* 2d 8 (*9th Cir.* 1957); but *cf.* 5 *Moore's Federal Practice,* pp. 1209–1210 (1968). The order of consolidation itself recognized this when it directed that Sweets answer Ava's interrogatories. The trial was properly conducted as a single action embodying claims by the plaintiff against both defendants and the jury appropriately returned a single verdict against them.

Sweets places its reliance on *Donofrio v. Farr Lincoln Mercury, Inc.,* 54 *N. J. Super.* 500 (*App. Div.* 1959) and *Bray v. Gross,* 16 *N. J.* 382 (1954). In *Donofrio* the Appellate Division held that the defendant-appellant could not assert, as a ground of appeal, certain error which was favorable to a codefendant. But the defendant there did not suggest either at the trial or on appeal that he had a claim for contribution against the codefendant. 54 *N. J. Super.,* at 505. In *Bray,* a codefendant successfully moved for dis-

missal at the close of the plaintiff's case. No mention of the possibility of a claim for contribution was made at that time and when the matter was later raised by the defendant, the trial court modified the dismissal to provide that it would be without prejudice. On appeal, the defendant urged that he had improperly been denied the opportunity "to prove the 'tort feasorship' of his co-defendant and so establish his claim to contribution." 16 *N. J.*, at 386. This Court, through Justice Wachenfeld, declined to interfere, stressing the untimeliness of the defendant's objection (16 *N. J.*, at 387–388) and suggesting that in future cases of like nature the trial court should generally withhold ruling on the motion for dismissal until the close of the entire case if any of the defendants so requests. 16 *N. J.*, at 388. Obviously neither *Donofrio* nor *Bray* furnishes any support for Sweets' attack on Ava's standing to appeal.

The Appellate Division rejected Ava's appeal from the judgment in favor of Sweets on the ground that there could be no relitigation of the "issues that had been determined adversely to plaintiff in the latter's prior suit" against the owner, lessee and operator of the tractor-trailer. 100 *N. J. Super.*, at 526. Though Sweets was not a party to the prior action we accept, for present purposes, its contention that the plaintiff and Ava are now collaterally estopped from advancing any of the issues which were actually litigated and determined against the plaintiff in the prior action. See *McAndrew v. Mularchuk*, 38 *N. J.* 156, 160–161 (1962); *Desmond v. Kramer*, 96 *N. J. Super.* 96 (*Law Div.* 1967); but *cf. Reardon v. Allen*, 88 *N. J. Super.* 560 (*Law Div.* 1965). See also Comment, "Mutuality of Collateral Estoppel," 63 Nw. U. L. Rev. 209 (1968); Note, "Collateral Estoppel: The Demise of Mutuality," 52 Cornell L. Q. 724 (1967). Thus if the plaintiff's claim against Sweets was grounded entirely on the negligence of the operator it would fail because of the jury's finding in the earlier action. But the plaintiff and Ava urge that the action against Sweets was grounded on Sweets' own negligence as distinct from any

negligence of the operator. If that be so, then the judgment in the earlier action was clearly no bar to the plaintiff's present action against Sweets. See *Batts v. Joseph Newman, Inc.*, 3 *N. J.* 503, 509 (1950); *Johnson v. Pullman Co.*, 200 *F. 2d* 751, 753 (*5th Cir.* 1952); *Restatement, Judgments* § 99, comment (b) (1942); *cf. Gardner v. Rosecliff Realty Co.*, 41 *N. J. Super.* 1, 7 (*App. Div.* 1956); *Lehmuth v. Long Beach Unified School District*, 53 *Cal. 2d* 544, 348 *P. 2d* 887, 891 (1960); see also *Mazzilli v. Accident, &c., Casualty Ins. Co.*, etc., 26 *N. J.* 307, 313–318 (1958); Vestal, "Preclusion/Res Judicata Variables: Nature of the Controversy," 1965 Wash. U. L. Q. 158.

In the earlier action, the operator was charged with negligence in that he failed to exercise the care which a reasonably prudent person would have taken. And reliance was placed by the plaintiff on *R. S.* 39:4–79 which states that an operator shall not allow a vehicle to stand backed to the curb when loading or unloading "except when it is impracticable to load or unload it while standing parallel to the curb." The operator followed Sweets' explicit directions in parking and, so far as appears in the record before us, he was not aware that any other manner of parking was feasible or available, nor was he aware of the customarily heavy traffic during that time of day. Under those circumstances, the jury could readily determine that the operator had acted as a reasonably prudent person without considering at all whether Sweets' mode of operations was reasonable.

In his action against Sweets, the plaintiff sought to establish, not that the operator was negligent, but that Sweets itself was negligent. Thus there was testimony that Sweets owned an adjacent warehouse building which was connected on the inside with its main receiving department. Deliveries could be and occasionally were made through this building without obstructing the highway at all. That, however, was a more time-consuming process and because of the greater convenience and lesser expense, Sweets' ordinary mode of operation entailed unloadings which frequently ob-

structed, as here, both of the southbound lanes on Park Avenue. In his charge, the trial judge submitted to the jury the issue of whether Sweets had been guilty of conduct which did not satisfy the legally prescribed standard of reasonable care and which proximately resulted in the plaintiff's injury. That issue differed from the one passed upon by the jury in the earlier action and was not barred for determination. Although the Appellate Division erroneously concluded that it was barred, it did so not because it considered that the negligence issues in the two cases were identical, but rather because it considered that the earlier jury had found no proximate causation between the parking and the accident. 100 *N. J. Super.*, at 527.

The jury's verdict in the earlier action was a general one which could and probably did rest on the finding that the operator was not negligent; that being so the Appellate Division was not at liberty to conclude that it also rested on the alternative finding of no proximate causation. As Professor Moore soundly points out, if "the judgment might have been based upon one or more of several grounds, but does not expressly rely upon any one of them, then none of them is conclusively established under the doctrine of collateral estoppel, since it is impossible for another court to tell which issue or issues were adjudged by the rendering court." 1B *Moore, Federal Practice* § 0.443[4], at 3915 (*2d ed. 1965*). See *Manard v. Hardware Mutual Casualty Company*, 12 *A. D. 2d 29, 207 N. Y. S. 2d* 807 (1960):

The defendant maintains, as its primary contention, that the prior judgment conclusively established that the driver of the automobile was operating it without the consent of the owner within the meaning of section 59 of the Vehicle and Traffic Law and that this, in turn, conclusively established that the automobile was being driven without the permission of the owner within the meaning of the provisions of the insurance policy, citing Hinchey v. Sellers, 7 N. Y. 2d 287, 197 N. Y. S. 2d 129. The difficulty with this contention is that, upon the trial of the action against the owner, the issues of negligence and contributory negligence were litigated as well as the issue of absence of consent. It is impossible to determine from the

general verdict in favor of the defendant in that action whether the determination was based upon an adverse finding by the jury on the issues of negligence or contributory negligence or whether it was based upon a finding of the absence of consent. In this situation, the judgment entered on the jury's verdict cannot be made the basis of a collateral estoppel as to either of the grounds upon which it might have been based (Rowland v. Hobby, 26 App. Div. 522, 50 N. Y. S. 629; King v. Doerr, 145 App. Div. 177, 129 N. Y. S. 986, affirmed King v. Beers, 203 N. Y. 559, 96 N. E. 1117; Watson v. Ross, 168 App. Div. 788, 154 N. Y. S. 551; Restatement of Judgments, § 68, comment l, p. 306; 30A Am. Jur., Judgments, §§ 381, 466, pp. 430–431, 506–507; 50 C. J. S. Judgments § 719, pp. 198–203.) 207 *N. Y. S.* 2d at 809.

See also *Happy Elevator No. 2 v. Osage Const. Co.,* 209 *F. 2d* 459, 461–462 (10th *Cir.* 1954) ; *Thomas v. Fertick,* 200 *F. Supp.* 851–853 (*E. D. Tenn.* 1962) ; *Walnut Creek Aggregates Co. v. Testing Eng., Inc.,* 248 *Cal. App.* 2d 690, 56 *Cal. Rptr.* 700, 705 (*Ct. App.* 1967) ; *cf. Maccia v. Tynes,* 39 *N. J. Super.* 1, 10–12 (*App. Div.* 1956) ; *Kulas v. Public Service Elec. and Gas Co.,* 41 *N. J.* 311, 320 (1964). To the extent that cases such as *Kelley v. Curtiss,* 16 *N. J.* 265, 273 (1954) embody views inconsistent with the foregoing, they may be considered as no longer in effect. See Note, "Developments in the Law — Res Judicata," 65 Harv. L. Rev. 818, 845–846 (1952).

Sweets contends that if, as we find, there was error in the granting of its motion for judgment notwithstanding the verdict, it was nonetheless entitled to a directed judgment or a new trial. The trial court rejected its contention in this regard (100 *N. J. Super.,* at 521) and it is now renewed before us in a brief embodying four points. The first point urges that "Sweets was lawfully using the highway for unloading purposes and the position of the tractor-trailer was a mere condition and not a proximate cause of the accident." Sweets relies primarily on *Brey v. Rosenfeld,* 72 *R. I.* 28, 48 *A.* 2d 177 (1946), 72 *R. I.* 316, 50 *A.* 2d 911 (1947) where the court held that the defendant was entitled to a directed verdict in a negligence action brought against him to recover for the death of the plaintiff's minor child. The

defendant was delivering cement for the construction of a wall and his truck occupied all but about 15 feet of the street which was about 26 feet wide. A motorist, while passing the truck, struck and killed the child who had wandered into the street. Action was instituted against the defendant owner of the truck on the ground that the parking was in violation of an ordinance and proximately contributed to the death·of the child. In the course of its opinion upholding the defendant, the court said:

The weakness of the plaintiffs' case as we view it is that, admitting that defendant violated the ordinance in not obtaining a permit, there is no evidence that he was unlawfully using the highway to unload the cement into the form. Temporary, reasonable and necessary obstructions of a public highway, and there need be no *absolute* necessity, are not invasions of the public easement of travel; a reasonable necessity is sufficient. 3 Dill. Mun. Corp., 5th Ed., § 1168. Because building is necessary, it has been said that stones, brick, lime, sand and other materials may be placed in the street, provided it is done in the most convenient manner. Commonwealth v. Passmore, 1 Serg. & R., Pa., 217. Whether or not obstructing a street is an act of negligence depends upon whether such use was reasonably necessary, having due regard for the public convenience and necessity. Fisher v. Los Angeles Pacific Co., 21 Cal. App. 677, 132 P. 767. 48 A. 2d at 179.

The distinctions between *Brey* and our case are quite evident. Sweets' mode of operations was not incidental or temporary in nature. It represented a deliberate and continued course of operations which entailed serious highway obstruction. Sweets had an alternate choice which would have involved no highway obstruction but would have been more time-consuming and less convenient. It knew of the heavy traffic conditions and knew or should have known that complete obstruction of both south lanes while those conditions existed would significantly increase the dangers to others traveling along the highway. Under the language of *Brey*, whether its obstruction was an act of negligence depended on whether the manner of use was "reasonably necessary". 48 A. 2d, at 179.

 In *Rappaport v. Nichols,* 31 *N. J.* 188 (1959) we pointed out that negligence is tested by whether the reasonably prudent person at the time and place should recognize and foresee an unreasonable risk or likelihood of harm or danger to others (*Schaublin v. Leber,* 50 *N. J. Super.* 506, 510 (*App. Div.* 1958)); that the standard of care is the conduct of the reasonable person of ordinary prudence under the circumstances (*Ambrose v. Cyphers,* 29 *N. J.* 138, 144 (1959)); and that the negligence may consist in the creation of a situation which involves unreasonable risk because of the expectable action of others (*Brody v. Albert Lifson & Sons,* 17 *N. J.* 383, 389 (1955)). 31 *N. J.,* at 201. Here the circumstances were such that a jury could fairly find that, in fixing upon its mode of operations, Sweets did not exercise the care expected of the ordinary prudent person and created unreasonable risk of harm to others lawfully using Park Avenue. See *Prosser, Torts* 148 *et seq.* (1964); 2 *Harper and James, Torts* 896*et seq.* (1956); *cf. Boese v. Love,* 300 *S. W. 2d* 453, 458 (*Mo.* 1957); *Mullen v. Fayette,* 274 *App. Div.* 527, 85 *N. Y. S. 2d* 64, 68 (1948), affirmed, 300 *N. Y.* 501, 89 *N. E. 2d* 20 (1949).

 Sweets urges that even if it was negligent the position of the tractor-trailer "was a mere fortuitous condition and in no sense a moving, efficient or proximate cause of the accident." As *Rappaport* pointed out, a tortfeasor is generally held answerable for the injuries which result in the ordinary course of events from his negligence and it is generally sufficient if his negligent conduct was a substantial factor in bringing about the injuries. 31 *N. J.,* at 203. The evidence was ample to establish that Sweets' conduct was a substantial factor and to support the jury's finding that Sweets was guilty of negligence contributing proximately to the accident. We find no merit in Sweets' distinction between "condition" and "cause"; Dean Prosser deals with the matter in the following terms:

"Cause" and "condition" still find occasional mention in the decisions; but the distinction is now almost entirely discredited. So far as it has any validity at all, it must refer to the type of case where the forces set in operation by the defendant have come to rest in a position of apparent safety, and some new force intervenes. But even in such cases, it is not the distinction between "cause" and "condition" which is important, but the nature of the risk and the character of the intervening cause. *Prosser, supra* at 286.

See also 2 *Harper and James, supra,* § 20.6, at 1153–54.

Sweets cites *Lutz v. Westwood Transportation Co.,* 31 *N. J. Super.* 285 (*App. Div.*), certification denied, 16 *N. J.* 205 (1954), and *Powers v. Standard Oil Co.,* 98 *N. J. L.* 730 (*Sup. Ct.*), affirmed, 98 *N. J. L.* 893 (*E. & A.* 1923), but in each of those cases, unlike the one at hand, the improper or negligent aspect of the defendant's conduct was not a substantial factor in bringing about the plaintiff's injuries. In *Lutz, supra,* a Public Service bus was standing and taking on passengers about two feet away from the curb (*cf. R. S.* 39:4–135) when it was struck by a Westwood Transportation bus. It was daytime, and the Public Service bus had been standing for an appreciable period of time and was in full view of the Westwood driver who saw it in ample time to avoid a collision. The court expressed the view that "in this state of things the standing bus offered no active potentiality for harm and its position about two feet from the curb will not support a charge of actionable negligence." 31 *N. J. Super.,* at 292. In *Powers,* the defendant parked its truck facing the wrong way on the side of the street. A child ran from behind the truck and, while attempting to cross the street, was struck by a motorist. The court held that the operator of the truck was not liable stating that the truck was "incapable in its inactive condition of perpetrating harm or damage". 98 *N. J. L.,* at 733. Without dealing with the broad expressions in its opinion, we need do no more than point out that the holding in *Powers* could not possibly have any fair application to the situation now before us. See *Beyer v. White,* 22 *N. J. Super.* 137, 142–143

*(App. Div.* 1952); *cf. Boese v. Love, supra,* 300 *S. W.* 2d, at 458; *Mullen v. Fayette, supra,* 85 *N. Y. S.* 2d, at 68.

In its second point, Sweets urges that its application for a new trial should have been granted by the trial court because the jury's verdict "was against the weight of the evidence and was the result of mistake, partiality, prejudice or passion." *R. R.* 4:61–1. It cites *Caputzal v. The Lindsay Co., supra,* where the injury to the plaintiff was found to be "an extraordinary occurrence, not reasonably to be expected in a normal person." 48 *N. J.,* at 76. Here the occurrence was neither extraordinary nor comparable to the bizarre happening in *Caputzal.* The blocking of both southbound lanes during heavy traffic was bound to increase the danger to others in the event of brake failure or other motoring mishap. The jury had the right to credit the plaintiff's evidence which was sufficient to support the finding that Sweets was negligent and that its negligence was a substantial factor in bringing abuot the injury. That being so, the trial court's refusal to grant a new trial was a proper exercise of its judgment and affords no valid ground of appeal.

In its third and fourth points, Sweets attacks the trial court's charge on "sudden emergency" *(Restatement, supra,* § 296; *Prosser, supra* § 33, at 171–173) and its failure to grant certain requests to charge dealing with negligence and proximate cause, citing *Powers v. Standard Oil Co., supra,* 98 *N. J. L.,* at 732–33 and *Hansen v. Eagle-Picher Lead Co.,* 8 *N. J.* 133, 141 (1951). In *Massotlo v. Public Service Coord. Transport.,* 71 *N. J. Super* 39 *(App. Div.* 1961), Judge Kilkenny took note of the modern view favoring the elimination of any separate charge on sudden emergency as unnecessary and confusing. 71 *N. J. Super.,* at 49. See also *Finley v. Wiley,* 103 *N. J. Super.* 95, 103 *(App. Div.* 1968). The trial court told the jury that where a motorist is placed in a position of peril, without fault on his part, "all that is required of him in such an emergency is that he act with ordinary care under the circumstances"; and that one who in a sudden emergency acts according

to his best judgment but not in the most judicious manner is not chargeable with negligence, provided he exercises "the care of a reasonable prudent person individually under like circumstances." The jury was instructed elsewhere in the charge as to negligence generally, and the sudden emergency language told it little or nothing beyond its undoubted knowledge as to human behavior and the overriding rule of due care in the circumstances. Under the existing precedents, the sudden emergency charge may be considered as having been properly applied by the trial court to the situation pictured by the plaintiff's testimony. *Cf. Barry v. Borden Farm Products Co.*, 100 *N. J. L.* 106, 109 (*E. & A.* 1924); *Harpell v. Public Service Coordinated Transport*, 20 *N. J.* 309, 317 (1956). In any event, we are satisfied that Sweets could have suffered no actual prejudice from the charge; the total lack of prejudice is evident from the discussion and determination earlier in this opinion of the issue of contributory negligence.

Sweets complains about the trial court's refusal to grant its requested charge on proximate cause which included language taken from *Powers* (98 *N. J. L.*, at 733) describing the truck there as "an immobile, inactive instrumentality, incapable in its inactive condition of perpetrating harm or damage." We have already dealt with *Powers* and its inapplicability here. When the trial judge was discussing the plaintiff's claim against Ava he charged on the general subject of proximate causation in full and traditional fashion. Though he did not repeat it in detail when dealing with the plaintiff's claim against Sweets he explicitly told the jury that the plaintiff must prove that Sweets was negligent and that its negligence was a proximate cause of the accident. The trial court was not obliged to charge in the terms submitted by Sweets; its charge on proximate cause, as given, was sufficient and the jury could not have been misled. See *Stackenwalt v. Washburn*, 42 *N. J.* 15, 26–27 (1964); *Cahill v. Mundet Cork Corp.*, 70 *N. J. Super.* 410, 417 (*App. Div.* 1961), certification denied, 36 *N. J.* 302 (1962).

 Sweets' final complaint is that the court refused to grant a requested charge embodying language taken from *Hansen v. Eagle-Picher Lead Co., supra*, 8 *N. J.*, at 141. There the plaintiff was struck on the head by a piece of sheet metal while on the defendant's premises. There was no evidence as to where the sheet metal came from. In the plaintiff's suit the trial court dismissed at the close of his case on the ground that negligence had not been established. In sustaining the dismissal, this Court said that a mere possibility that the defendant was responsible for the plaintiff's injuries was insufficient and that, while certainty was not required, probability must be established. 8 *N. J.*, at 141. The language had no particular pertinence here and the trial court rightly declined to embody it in its charge though it had appropriately appeared in an opinion of this Court. That opinion was unrelated to the situation at hand and borrowing from it would have tended to confuse rather than clarify. The trial court told the jury that negligence is not presumed but must be established and that the plaintiff "must prove by the greater weight of the evidence, that the defendant, Sweets Company of America, was negligent, and that that negligence was a natural and proximate cause of the accident." That was clear enough and there was no occasion for introducing the distinction between possibility and probability which may be a crucial one in other situations but was not really involved here.

The plaintiff's judgment against both Ava and Sweets pursuant to the jury's verdict is reinstated in full and to that end the decision of the Appellate Division is:

Affirmed in A–79,

Reversed in A–80.

A–79:

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and HANEMAN—6.

*For reversal*—None.

A–80:

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and HANEMAN—6.

*For affirmance*—None.