261 N.J. Super. 339 (1993)
618 A.2d 917
STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION AND ENERGY, DIVISION OF FISH, GAME AND WILDLIFE, PLAINTIFF-RESPONDENT,
v.
RICHARD SANTOMAURO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 7, 1992.
Decided January 15, 1993.
*341 Before Judges PETRELLA, LONG and D'ANNUNZIO.
Nelson & Fromer, attorneys for appellant (Steven E. Nelson, of counsel; Michele Filippone McGeary, on the brief).
Robert J. Del Tufo, Attorney General, attorney for respondent (Joseph L. Yannotti, Assistant Attorney General, of counsel; James M. Murphy, Deputy Attorney General, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Defendant Richard Santomauro was found by the Law Division, Special Civil Part, in a civil penalty proceeding, to have committed violations of N.J.S.A. 23:4-27 by offering for sale two taxidermically processed deer heads, with antlers, at the 1991 Monmouth County Hunting and Fishing Expo in Ocean-port, New Jersey. Santomauro was fined $100 and costs of $15 *342 for each of the two violations.[1] Pretrial motions to dismiss the charges against him based on collateral estoppel or res judicata because he had been acquitted in the Municipal Court of Oceanport on similar charges in 1990 were denied.
On his appeal Santomauro argues that the judge erred in not applying either collateral estoppel or res judicata to preclude the State from relitigating issues actually determined in a prior action. In contesting the judge's interpretation of N.J.S.A. 23:4-27 Santomauro argues that even if this statute prohibits the sale of certain wild deer prepared by taxidermy, it does not prohibit the sale of wild deer which are not native to this State. In addition, he argues that the cited statute is vague, and thus unconstitutional; the findings of the trial judge are not supported by sufficient credible evidence; and the Division's enforcement of the statute against him was purposely discriminatory.
We have considered all of Santomauro's arguments in light of the record and the arguments presented and conclude that they are without merit. R. 2:11-3(e)(1)(A) and (E). We add only the following comments. The trial judge interpreted N.J.S.A. 23:4-27 as applying to the sale of body parts of all species of wild deer, rather than applying only to deer native to New Jersey. We agree.
Res judicata did not bar the 1991 action because the case involved different violations of the statute at a different time and involved different officers. Moreover, the 1991 summonses did not arise out of the same transaction or occurrence as the 1990 cause of action despite the similar nature of the violations. Moreover, collateral estoppel is an equitable doctrine and need not be applied "if there are sufficient countervailing interests," In re Coruzzi, 95 N.J. 557, 568, 472 A.2d 546 (1984), appeal dismissed, 469 U.S. 802, 105 S.Ct. 56, 83 L.Ed.2d *343 8 (1984), or if it would not be fair to do so. Kozlowski v. Smith, 193 N.J. Super. 672, 675, 475 A.2d 663 (App.Div. 1984). The mere fact that one of the mounts confiscated in 1991 utilized the same antlers as one of the items that was the subject of the earlier municipal court action in which Santomauro was found not to have committed a violation is not dispositive.[2] Here, there are "sufficient countervailing interests" to militate against the application of the doctrine of collateral estoppel. These considerations include the clear language of the statute, the lack of legislative history and prior court decisions, and the environmental and wildlife concerns which the statute addresses.
Where the issue is essentially an interpretation of the law, the court is not precluded from readdressing the issue so that inequitable administration of the law may be avoided. See City of Plainfield v. Public Serv. Elec. & Gas Co., 82 N.J. 245, 258-259, 412 A.2d 759 (1980). If collateral estoppel was applied here with respect to Santomauro, it is unlikely that it could apply to any other sellers of similar items.
Finally, the 1990 municipal court matter was decided based solely on stipulated facts, without testimony. We have no record to explain the basis or reasons for that court's decision. Thus, we conclude that application of collateral estoppel would be inappropriate because the judgment might have been based on one or more of several grounds, without relying expressly on any one of them. Where no ground is conclusively established and "it is impossible for another court to tell which issue or issues were adjudged by the rendering court," collateral estoppel is not applied. Ettin v. Ava Truck Leasing, Inc., 53 N.J. 463, 480, 251 A.2d 278 (1969) (citation omitted).
*344 In addition, Santomauro argues that the Superior Court, Special Civil Part, should have been considered as sitting as a municipal court because it has concurrent jurisdiction over the Fish and Game Laws in Title 23. This argument is not helpful. The question is not which court should hear the appeal. See State v. Natoli, 237 N.J. Super. 52, 566 A.2d 1167 (App.Div. 1989). The statutory penalty provisions for violations of the Fish and Game Code are civil in nature, and thus neither criminal nor quasi-criminal. See Department of Conservation and Economic Dev. v. Scipio, 88 N.J. Super. 315, 319-320, 212 A.2d 184 (App.Div.), certif. denied, 45 N.J. 598, 214 A.2d 32 (1965). See also Sawran v. Lennon, 19 N.J. 606, 612-616, 118 A.2d 10 (1955).
We turn then to the statute. Santomauro misreads N.J.S.A. 23:4-27 in arguing that the statute only precludes the selling of parts of native species of deer. The statute provides:

No person shall sell, offer for sale or possess for sale in this State, whether killed or taken within or without the State, a dead body, or part thereof, of any species of squirrel, wild rabbit, wild hare, or wild deer, or of a game bird or song bird belonging to a species or subspecies native to this State and protected by the provisions of the State Fish and Game Code, or, in the absence of any provision in said code to the contrary protected by law or belonging to a family, any species or subspecies of which is native to the State and protected by the provisions of the State Fish and Game Code, or, in the absence of any provision in said code to the contrary, protected by law, under a penalty of $20.00 for each such squirrel, wild rabbit, wild hare, wild deer or bird so sold, offered for sale or possessed for sale; and under a penalty of not less than $100.00 and not more than $300.00 for each such wild deer so sold, offered for sale or possessed for sale; provided, however, that wild rabbits or wild hares legally killed in another State may be brought into this State at any time for possession, sale and consumption; and provided, further, however, that nothing herein contained shall prohibit the sale of commercially raised wild rabbits and wild hares. The carcasses of deer and the unplucked carcasses of mallard, black and wood ducks, Canada geese, ruffed grouse, squirrels, rabbits, hares, quails and pheasants of all species raised on licensed game preserves and properly tagged, and the unplucked carcasses of Scotch grouse, European black grouse, European black plover, redlegged partridge and Egyptian quail coming from a foreign country, which are properly tagged by the State authorities, may be sold at any time for food purposes. (Emphasis supplied).
The reference to "wild deer" belongs in and is part of the phrase "of any species of squirrel, wild rabbit, wild hare, or *345 wild deer." The next modifying phrase which says "belonging to a species or subspecies native to this State ..." refers only to game and songbirds. See generally, State in the Interest of S.Z., 177 N.J. Super. 32, 35, 424 A.2d 855 (App.Div. 1981) ("It is a principle of statutory construction that where no contrary intention appears, `referential and qualifying phrases refer solely to the last antecedent....'"); Gudgeon v. County of Ocean, 135 N.J. Super. 13, 17 & n. 1, 342 A.2d 553 (App.Div. 1975) ("[Q]ualifying words refer solely to the immediately preceding word."); T.I. McCormack Trucking Co. v. United States, 251 F. Supp. 526, 533 (D.N.J. 1966) ("[I]f [a] modifier is intended to relate to more than the `last antecedent,' a comma is used to set off the modifier from the entire series."). Hence, the sale by Santomauro of deer heads and antlers was a violation of the statute regardless of whether the deer is native to this State.
Our conclusion that N.J.S.A. 23:4-27 applies to wild deer whether or not native to New Jersey is buttressed by the language of N.J.S.A. 23:4-30, which provides in relevant part: "Except as otherwise provided in this Title, when the possession or sale of fowl or game is prohibited by this Title, ... reference is had equally to such fowl or game coming from without the State as to that taken within the State." The Legislature in this language has expressed its clear intention of prohibiting traffic in out-of-state wildlife in addition to that native to this State. See also N.J.S.A. 23:5-9; cf. N.J.S.A. 23:2A-2c.
As evidenced by the trial testimony with respect to the difficulty in distinguishing between the different species of deer that might be used in taxidermically prepared mounts (especially since the antlers may be from one species while the "cape" might be from another, as defendant suggests was the case in the court below), an interpretation that requires conservation officers to determine whether an item comes from a *346 native deer would unduly hamper Fish and Game law enforcement.
We also reject Santomauro's argument that the skin of an animal is not a body part under the terms of the statute. A consideration of N.J.S.A. 23:4-27 as a whole renders such an interpretation unreasonable and unduly restrictive. The law states in mandatory terms that it is illegal to "sell, offer for sale, or possess for sale ... a dead body, or part thereof, of any species of squirrel, wild rabbit, wild hare, or wild deer. ..." (Emphasis supplied). The exception in the latter half of the statute for sale of body parts of certain enumerated animals for consumption, deals only with the sale of the meat of an animal. The preceding portion of the statute is broader and includes all body parts. See also N.J.S.A. 23:1-4.[3] Significantly, the definition section of the "Endangered and Nongame Species Conservation Act" defines "wild life" as "any wild mammal, bird, reptile, amphibian, fish, mollusk, crustacean or other wild animal or any part, product, egg or offspring or the dead body or parts thereof." N.J.S.A. 23:2A-3(f) (Supp. 1992). (Emphasis supplied). We find it highly doubtful that the Legislature would have used the word "parts" in that statute if, as Santomauro argues with respect to N.J.S.A. 23:4-27, that word allows the skin of an animal to be sold for commercial purposes. See N.J.S.A. 23:2A-3(c)(2) (noting that over-utilization of a species for commercial purposes would diminish the prospects of survival for that species).
Santomauro's argument, to the extent that it claims selective enforcement, is illusory. In the first place, Santomauro wrote a letter to the Division of Fish and Game in advance of *347 the 1991 Expo indicating that he again intended to sell deer parts. He broadly distributed another letter detailing and criticizing the Division's enforcement of the statute to others interested in the particular annual event. This was a challenge to enforcement of the law. Moreover, the conservation officers who testified said that they had in fact inspected the different exhibits at the 1991 Hunting and Fishing Expo and found no other violations. The judge's findings in this case are supported by sufficient credible evidence in the record and we have no basis to disturb them. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 323 A.2d 495 (1974).
Finally, as to the claim that the statute is vague and thus unconstitutional, we note that the trial judge, apparently relying on R. 4:28-4, erroneously refused to consider that issue on the ground that notice was not given to the Attorney General's office. However, the cited rule only requires such notice of a challenge to the validity of a statute "in any action to which the State or an agency or officer thereof is not a party." R. 4:28-4(a). Here, not only was the State a party to the action, but the Attorney General's office was trying the case on behalf of the State. In any event, we conclude that the statute is neither overbroad nor vague, and certainly not as applied to Santomauro. See State v. Cameron, 100 N.J. 586, 591-593, 498 A.2d 1217 (1985).
Affirmed.
NOTES
[1] The judge found no violation with respect to a separate summons which charged sale of ring-neck pheasant and that issue is not before us.
[2] We are informed that the 1990 municipal court decision was not appealed because of the State's failure to timely file an appeal. Santomauro's attorney successfully opposed an extension of the filing deadline and no appeal was taken.
[3] N.J.S.A. 23:1-4 provides:

This title shall not apply to a public museum or natural history society of this State so as to prevent the collection of specimens for it nor to the breeding, raising and producing in captivity, and the marketing, of fox, other than red or gray, mink, chinchilla, marten, fisher, caracul or other fur-bearing animals not native to New Jersey.